1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PATRICK JACKSON,

11           Petitioner,              No. 2:10-cv-2878 MCE EFB P

12       vs.

13   RICK HILL,

14           Respondent.          FINDINGS AND RECOMMENDATIONS

15   _____/

16       Petitioner is a state prisoner proceeding without counsel on an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2008 judgment of

18   conviction entered against him in the San Joaquin County Superior Court on a charge of second

19   degree robbery, with prior felony and prison term allegations.  He seeks relief on the grounds

20   that his right to due process was violated by jury instruction error and prosecutorial misconduct,

21   and that his appellate counsel rendered ineffective assistance.  Upon careful consideration of the

22   record and the applicable law, the undersigned recommends that petitioner's application for

23   habeas corpus relief be denied.

24   ////

25   ////

26   ////

1

1   **I.      Factual Background**[1]

2              Defendant Patrick Odonald Jackson was tried by jury and found
            guilty of second degree robbery. (Pen.Code, § 211.)[2]  In a
3            bifurcated hearing, the trial court found that defendant previously
            had been convicted of assault with a firearm (§ 245, subd. (a)), a
4            serious felony within the meaning of section 667, subdivision (a),
            as well as a "strike" conviction within the meaning of the "three
5            strikes" law.  The trial court also found that defendant served a
            prior prison term within the meaning of section 667.5, subdivision
6            (b).  The trial court sentenced defendant to 11 years in state prison
            and imposed other orders.

7
            On appeal, defendant alleges several instructional errors, asserts
8            that the trial court prejudicially abused its discretion by allowing
            the prosecutor to engage in misconduct, and claims that an
9            unlawful sentence was imposed because the trial court imposed
            and then stayed a one-year sentence enhancement for defendant's
10           prior prison term.  We disagree with each contention and affirm
            the judgment.

11
            **FACTUAL AND PROCEDURAL BACKGROUND**
12
            **The People's Case**
13
            On a September night in 2007, just after midnight, Laura Orsua
14           was returning to her room at the Crest Motel in Stockton,
            California.  Orsua testified that as she opened her door, defendant
15           came up from behind and "forced his way" into the room by
            throwing Orsua to the floor.  As she was getting to her feet, a
16           friend by the name of Kirby Wyrick called her cell phone.  Orsua
            answered the call and exclaimed: "Kirby, help me. Help me."
17           Defendant responded: "Who the hell you talking to?  Give me that
            phone."  As Orsua and defendant struggled for control of the
18           phone, he grabbed her by the hair and threw her into a wall.  Orsua
            released the phone.  At this point, Orsua heard someone yelling her
19           name from outside the room.  Defendant departed with the phone
            and the following warning: "You better shut up before I fucking
20           really hurt you."

21   ////

22   ─────────────────

23           [1]  In its unpublished memorandum and opinion affirming petitioner's judgment of
      conviction on appeal, the California Court of Appeal for the Third Appellate District provided
      the following factual summary.  Petitioner has filed a copy of the Court of Appeal's opinion with
24    the court, but the copy is missing every other page.  *See* Resp.'s Lodg. Doc. 3.  Accordingly, the
      court will refer to the unpublished opinion on Westlaw when discussing the opinion of the
25    California Court of Appeal.

26           [2]  All further statutory references are to the Penal Code.

According to Orsua's testimony, shortly after defendant left the room, she also departed and headed toward the front of the motel. When she got outside, she saw Wyrick standing in front of defendant. The two men "had words." Defendant told Wyrick to "mind his own business." Wyrick walked away from defendant and followed Orsua toward the front of the motel. Instead of taking this opportunity to depart, defendant followed, grabbing Wyrick and punching him several times. Defendant continued the assault even after Wyrick fell to the ground. At this point, Orsua and a friend who also lived in the motel, Jennifer Glaser, tried to push defendant away from Wyrick. Defendant pulled a "knife or screwdriver" out of his jacket. A third woman then opened the door to Glaser's motel room, and Orsua and Wyrick went inside. As Orsua was entering the room, she saw defendant hit Glaser before he "took off running."

Jennifer Glaser testified that she entered the story when she heard "yelling and screaming" and what "sounded like a rag doll being thrown around the room" coming from Orsua's motel room. Orsua's front room window previously had been broken, so Glaser could hear the confrontation clearly through the open window. Glaser then went to Orsua's door and heard a male voice saying: "Who is this Kirby [Wyrick] dude? Who is this white dude? What's he got? I'm going to get him. I'm going to rob his ass. Where's he at?" Wyrick and Glaser were friends, so Glaser spoke up loudly through the open window: "That's what you are not going to do." Defendant then opened the door and confronted Glaser, demanding: "What the fuck you going to do, white bitch?" Glaser turned around and returned to her room. Before she was able to get inside, she saw Wyrick approaching from across the street. At this point, Orsua was still in her room.

Glaser again emerged from her room and saw defendant punching Wyrick. Orsua was outside of her room trying to break up the fight; Glaser also tried to pull defendant off of Wyrick. Defendant then pulled "something shiny" out of his jacket and said: "I'll show you what I do to a white bitch like you. I'll kill a bitch like you ." While Glaser did not get a good look at the object, she believed it was a knife. Defendant then grabbed Glaser's hair, pulled her head back, and stabbed her in the roof of the mouth. Glaser fell to the ground; defendant left the scene.

Officers of the Stockton Police Department arrived within five minutes. Officers Michael Otten and Marcus Davenport were dispatched to the scene. Officer Otten testified that he received a description of the suspect over the radio, and that he was exiting the Crest Motel parking lot on foot when he "saw a subject matching the description" approximately half a block from the motel, walking southbound on Sierra Nevada Street toward Park Street. The subject made a right turn onto Park Street, walking away from Officer Otten, passed a row of bushes, stepped over a

3

small fence, and lay down on the ground behind a house. Officer Otten pursued and ordered the subject off of the ground while Officer Davenport placed him in handcuffs.

A screwdriver was found in the bushes the subject passed before he hid in the yard. A black jacket was found on the ground next to the subject; a search of the jacket revealed a Metro PCS cell phone. The subject was identified as defendant. The phone recovered from defendant was identified as the phone taken from Orsua at the motel.

**The Defense Case**

Defendant testified that he purchased the cell phone for $20 from a man named Danny. The transaction took place at the Chevron gas station two or three blocks from the Crest Motel. Defendant acknowledged that the phone was possibly stolen. According to defendant, he was walking back to the motel to visit a friend when he was confronted by Orsua at the intersection of Wilson Way and Park Street. Despite the facts that Orsua and defendant did not know each other and that she never saw the phone in defendant's possession because he had the phone in his pocket the entire time, somehow Orsua knew that defendant had her phone. After a brief "heated" conversation regarding the phone, defendant walked away. A short time later, defendant was apprehended while lying on the ground "avoiding police." Defendant believed he had outstanding traffic warrants, so when he spotted the police, he stepped over a short fence into someone's yard and lay down on the ground.

**Procedural Overview**

Defendant was charged by amended information with attempted murder (§§ 664/187), first degree burglary (§ 459), assault by use of force likely to cause great bodily injury (§ 245, subd. (a)(1)), and second degree robbery (§ 211). The information also alleged defendant had previously been convicted of assault with a firearm (§ 245, subd. (a)), a serious felony within the meaning of section 667, subdivision (a), as well as a strike conviction within the meaning of the three strikes law, and that defendant served a prior prison term within the meaning of section 667.5, subdivision (b). A jury convicted defendant of second degree robbery and acquitted him on the remaining counts. Following a bifurcated hearing, the trial court found the enhancement allegations to be true; sentenced him to 11 years in state prison (middle term of three years on the robbery, doubled pursuant to the three strikes law, plus five years for the prior serious felony enhancement); and imposed other orders.

////

4

1   *People v. Jackson*, No. C058334, 2011 WL 1040317 (Cal.App. 3d Dist. April 20, 2009)

2   (hereinafter Opinion), at **1-2.

3       Petitioner subsequently filed a petition for writ of habeas corpus in the California

4   Supreme Court, in which he raised the same claims that he raised on appeal.  Resp.'s Lodg. Doc.

5   5.  The Supreme Court summarily denied that petition by order dated August 18, 2010.  Lodg.

6   Doc. 6.

7   **II.    Analysis**

8       **A.  Standards for a Writ of Habeas Corpus**

9       An application for a writ of habeas corpus by a person in custody under a judgment of a

10  state court can be granted only for violations of the Constitution or laws of the United States.  28

11  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

12  application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

13  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

14  2000).

15      Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

16  corpus relief:

17          An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
18          not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
19          claim -

20              (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
21          determined by the Supreme Court of the United States; or

22              (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
23          State court proceeding.

24      For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

25  holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v.*

26  *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06

5

1   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

2   clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d

3   at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

4          A state court decision is "contrary to" clearly established federal law if it applies a rule

5   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

6   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

7   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant

8   the writ if the state court identifies the correct governing legal principle from the Supreme

9   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]

10  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

11  F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

12  simply because that court concludes in its independent judgment that the relevant state-court

13  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

14  application must also be unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v.*

15  *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

16  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

17  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

18  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

19  
          [3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
20  overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
21  384 F.3d 628, 638 (9th Cir. 2004)).  Further, a determination of a factual issue made by a state
    court is presumed to be correct and the petitioner has the burden of rebutting that presumption by
22  "clear and convincing evidence."  28 U.S.C. § 2254(d)(1).  Petitioner argues in the traverse that
    "to the limited extent that the state court did determine the operative 'facts' regarding
23  Petitioner's habeas corpus claims, those factual findings were based on unreasonable
    determinations of the state court evidence presented, and are contradicted by clear and
24  convincing, contrary evidence submitted in the Petition and herein."  Traverse at 4.  In spite of
    this broad statement, petitioner does not specifically challenge any of the facts recited by the
25  California Court of Appeal in its decision on petitioner's claims.  Petitioner has therefore failed
    to rebut the presumption of correctness set forth in § 2254(d)(1) and the court will presume that
26  those facts are correct.

1    of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___, 131 S. Ct. 770, 786

2    (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

3    condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

4    state court's ruling on the claim being presented in federal court was so lacking in justification

5    that there was an error well understood and comprehended in existing law beyond any possibility

6    for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

7        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

8    court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

9    527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

10   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

11   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

12   considering de novo the constitutional issues raised.").

13       The court looks to the last reasoned state court decision as the basis for the state court

14   judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

15   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

16   previous state court decision, this court may consider both decisions to ascertain the reasoning of

17   the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When

18   a federal claim has been presented to a state court and the state court has denied relief, it may be

19   presumed that the state court adjudicated the claim on the merits in the absence of any indication

20   or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85. This

21   presumption may be overcome by a showing "there is reason to think some other explanation for

22   the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

23   803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

24   support its conclusion, a federal habeas court independently reviews the record to determine

25   whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*

26   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

1  review of the constitutional issue, but rather, the only method by which we can determine

2  whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.

3  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

4  there was no reasonable basis for the state court to deny relief."  *Harrington*, 131 S. Ct. at 784.

5      When it is clear, however, that a state court has not reached the merits of a petitioner's

6  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

7  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

8  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

9      **B.  Jury Instruction Error**

10     Petitioner raises two claims of jury instruction error.  After setting forth the applicable

11 legal principles, the court will address these claims in turn below.

12     **1.  Legal Standards**

13     In general, a challenge to jury instructions does not state a federal constitutional claim.

14 *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir.

15 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely

16 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process

17 right guaranteed by the fourteenth amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

18 To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so

19 infected the entire trial that the resulting conviction violates due process.'"  *Prantil v. State of

20 Cal.*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir.

21 1987)).  In making its determination, this court must evaluate the challenged jury instructions

22 "'in the context of the overall charge to the jury as a component of the entire trial process.'"  *Id.*

23 (quoting *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where the challenge is to a

24 refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because

25 "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement

26 ////

of the law." *Henderson*, 431 U.S. at 155. *See also Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997).

## 2. Jury Instructions on Claim of Right

In his first claim for relief, petitioner argues that the trial court violated his right to due process in failing to give a sua sponte jury instruction on "the defense of claim of right." Dckt. No. 1 at 5. Petitioner testified at trial that he believed he was the owner of the cell phone that was alleged to have been taken from Orsua in the robbery because he had purchased the phone from someone named Danny. Petitioner notes that the jury apparently believed the bulk of his trial testimony, because he was acquitted of all charges except the robbery. *Id.* He concludes from this that the jurors would also have been inclined to credit his defense that he had a "claim of right" to the phone if they had been given a jury instruction explaining that defense.

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant's first contention on appeal is that the trial court prejudicially erred by failing to instruct the jury sua sponte on the defense of claim of right pursuant to Judicial Council of California Criminal Jury Instructions (2007-2008), CALCRIM No. 1863.[4] Specifically, defendant asserts that his conviction must be reversed because the "evidence at trial indicated that [he] believed he was the owner of the cell phone," which supported "an absolute defense of claim of right against the charge of robbery" and triggered the trial court's sua sponte duty to instruct on the defense. We disagree.

---

[4] CALCRIM No. 1863 provides, in relevant part: "If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft/[or] robbery). [¶] The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it. [¶] In deciding whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith. [¶] [The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.] [¶] ... [¶] [The claim-of-right defense does not apply if the claim arose from an activity commonly known to be illegal or known by the defendant to be illegal.]"

The trial court has a sua sponte duty to instruct on a defense only where there is substantial evidence to support the defense and the defense is not inconsistent with the defendant's theory of the case. (*People v. Felix* (2001) 92 Cal.App.4th 905, 911 (*Felix*); *People v. Breverman* (1998) 19 Cal.4th 142, 157 (*Breverman*).)  "The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery."  (*People v. Tufunga* (1999) 21 Cal.4th 935, 938 (*Tufunga*).)

"'[A] trial court is not required to instruct on a claim-of-right defense unless there is evidence to support an inference that [the defendant] acted with a subjective belief he or she had a lawful claim on the property.' [Citations.]" (*Tufunga, supra,* 21 Cal.4th at p. 944.)  "Whether or not the evidence provides the necessary support for drawing that particular inference is a question of law. [Citation.]  Although a trial court should not measure the substantiality of the evidence by undertaking to weigh the credibility of the witnesses, the court need not give the requested instruction where the supporting evidence is minimal and insubstantial."  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145, fn. omitted.)

Applying the foregoing rules, we conclude there was no substantial evidence supporting the inference that defendant openly took Orsua's cell phone with the subjective belief he had a lawful claim on the phone.  First, the claim-of-right defense is inconsistent with defendant's theory of the case.  Defendant testified unequivocally that he did not take Orsua's cell phone.  According to defendant's theory of the case, he bought the phone from a man named Danny for $20 and had absolutely nothing to do with the robbery at the Crest Motel.  Because defendant's theory of the case, that he did not openly take the phone from Orsua, is inconsistent with the defense of claim of right, the trial court was not obligated to instruct on the defense.  (*Felix, supra,* 92 Cal.App.4th at p. 911; *Breverman, supra,* 19 Cal.4th at p. 157.)  Second, the claim-of-right defense does not apply where the defendant attempts to conceal the taking at the time it occurred or after the taking was discovered.  (*People v. Wooten* (1996) 44 Cal.App.4th 1834, 1848-1849.)  By defendant's own account, he had the phone concealed in his jacket when Orsua confronted him on the street.  He also attempted to conceal the fact that he had the phone on his person when confronted by police by removing the jacket containing the phone before lying on the ground in the backyard.

The trial court was under no duty to instruct the jury on the claim-of-right defense.

Opinion at **3-4.

10

1    A state court's determination that a requested jury instruction is not allowed under state

2    law cannot form the basis for federal habeas relief. *McGuire*, 502 U.S. at 71-72. *See also*

3    *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). The decision of the California Court

4    of Appeal that petitioner had no right under state law to a jury instruction on a the defense of

5    "claim of right" is binding on this court. *See Waddington v. Sarausad*, 555 U.S. 179, 192 n.5

6    ("we have repeatedly held that 'it is not the province of a federal habeas court to reexamine

7    state-court determinations on state-law questions"); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

8    "a state court's interpretation of state law . . . binds a federal court sitting in federal habeas").

9    Accordingly, any claim based on a violation of state law should be denied.

10    Petitioner has also failed to demonstrate that the trial court violated his rights under the

11    federal constitution when it failed to give a sua sponte jury instruction supporting his defense of

12    claim of right. Petitioner fully described his version of the events to the jury when he testified at

13    trial. Resp.'s Lodg. Doc. 8, Reporter's Transcript on Appeal (hereinafter RT) at 202-06.

14    Specifically, petitioner testified that he bought the cell phone from Danny about ten minutes

15    before he came to the Crest Hotel to visit a friend, and that Orsua confronted him at the hotel,

16    told him the cell phone was hers, and asked him to give it back. *Id.* Petitioner further testified

17    that he refused to give the phone back to Orsua because she did not offer to refund the money

18    that he had paid for the phone. *Id.* Through this testimony, the jury was made fully aware of

19    petitioner's defense that he had a right to the phone. Further, petitioner was charged with

20    unlawfully taking the cell phone from Orsua, not unlawfully taking the cell phone from Danny.

21    Therefore, petitioner's intent at the time he bought the cell phone from Danny was irrelevant to

22    the charge that he stole the phone from Orsua. Put another way, there was insufficient evidence

23    introduced at petitioner's trial to support his defense of "claim of right" to the charge of robbing

24    Orsua because petitioner claimed he did not take the phone from Orsua. There was no evidence

25    that he believed he had a "claim of right" to the phone that was taken from Orsua. Because the

26    facts of this case did not support a defense of "claim of right," and because the jury was fully

1  apprised of petitioner's version of the relevant events, the omission of a jury instruction on the

2  defense of "claim of right" did not rise to the level of a due process violation.  Accordingly, this

3  jury instruction claim should be denied.

4  ### 3.  Jury Instruction on Lesser Included Offense

5          In his second claim for relief, petitioner argues that the trial court violated his right to due

6  process in failing to instruct the jury, sua sponte, on the lesser included offense of theft.  He

7  argues that, by forcing the jury to convict him of robbery or "nothing," the jury was more likely

8  to "resolve[] its doubt in favor of conviction."  Dckt. 1 at 5-6.  Petitioner contends that "a

9  reasonable jury, properly instructed, may have concluded that a theft took place, but that [the]

10 crime of robbery did not."  *Id.*

11         The California Court of Appeal denied this jury instruction claim, reasoning as follows:

12         Defendant's next contention is that the trial court prejudicially
           erred by failing to instruct the jury sua sponte on the crime of theft
13         as a lesser-included offense of robbery.  Again, we disagree.

14         "'It is well settled that the trial court is obligated to instruct on
           necessarily included offenses – even without a request – when the
15         evidence raises a question as to whether all of the elements of the
           charged offense are present and there is evidence that would justify
16         a conviction of such a lesser offense.' [Citation.]"  (*People v.
           Ledesma* (2006) 39 Cal.4th 641, 715.)  However, "[a] criminal
17         defendant is entitled to an instruction on a lesser included offense
           only if [citation] 'there is evidence which, if accepted by the trier
18         of fact, would absolve [the] defendant from guilt of the greater
           offense' [citation] but not the lesser.  [Citations.]"  (*People v.
19         Memro* (1995) 11 Cal.4th 786, 871; *see People v. Barton* (1995) 12
           Cal.4th 186, 194-195; *see also People v. Berry* (1976) 18 Cal.3d
20         509, 518-519; *People v. McCoy* (1944) 25 Cal.2d 177, 187-188;
           *People v. Lesnick* (1987) 189 Cal.App.3d 637, 642-643; *People v.
21         Chambers* (1982) 136 Cal.App.3d 444, 455-456; *People v. Ellers*
           (1980) 108 Cal.App .3d 943, 954.)

22
23         "Theft is a lesser included offense of robbery, which includes the
           additional element of force or fear."  (*People v. Melton* (1988) 44
           Cal.3d 713, 746.)  Accordingly, the trial court had a sua sponte
24         duty to instruct the jury on theft as a lesser included offense to
           robbery if, and only if, there is evidence in the record that would
25         have allowed the jury to conclude defendant feloniously took and
           carried away Orsua's cell phone with the intent to permanently
26         deprive her of its use, but did not do so by means of force or fear.

12

1

2

3

4

5

6

> Here, again, defendant's theory of the case was that he bought the phone from a man named Danny for $20 and did not feloniously take or carry away the phone. Orsua's account, largely corroborated by Glaser's testimony, places defendant in her motel room accomplishing the felonious taking and carrying away by means of force. Defendant has pointed to no evidence in the record that would have allowed the jury to find he took and carried away the phone, but did not do so by force or fear. He either did so by force, or not at all. Accordingly, defendant was not entitled to an instruction on the lesser included offense of theft. (*See People v. Salas* (1978) 77 Cal.App.3d 600, 607-608.)

7 Opinion at *4.

8     The United States Supreme Court has held that the failure to instruct on a lesser included

9 offense in a capital case is constitutional error if there was evidence to support the instruction.

10 *Beck v. Alabama*, 447 U.S. 625, 638 (1980). The Supreme Court has not decided whether this

11 rationale also extends to non-capital cases, and the Ninth Circuit, like several other federal

12 circuits, has declined to extend *Beck* to find constitutional error arising from the failure to

13 instruct on a lesser included offense in a non-capital case. *See Solis v. Garcia*, 219 F.3d 922,

14 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of

15 a state trial court to instruct on lesser included offenses in a non-capital case does not present a

16 federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of

17 a state court to instruct on a lesser offense fails to present a federal constitutional question and

18 will not be considered in a federal habeas corpus proceeding"). Accordingly, the decision of the

19 California courts denying petitioner relief as to this claim was not contrary to United States

20 Supreme Court authority as set forth in the *Beck* decision. Further, to find a constitutional right

21 to a lesser-included offense instruction here would require the application of a new rule of law in

22 the context of a habeas petition, something the court cannot do under the holding in *Teague v.*

23 *Lane*, 489 U.S. 28 (1989). *See Solis*, 219 F.3d at 929 (habeas relief for failure to instruct on

24 lesser included offense in non-capital case barred by *Teague* because it would require the

25 application of a new constitutional rule); *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995),

26 *overruled on other grounds* by *Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999) (en banc) (same).

13

1    In addition, as noted by the trial court, the evidence introduced at petitioner's trial was

2    insufficient to support a conviction for theft.  Ms. Orsua testified that petitioner took her phone

3    by means of force and fear, and petitioner testified that he bought the phone from someone else.

4    Neither of these scenarios constitutes a simple theft.  Given the trial evidence, the trial court's

5    failure to give an irrelevant instruction on theft could not have had a "substantial and injurious

6    effect on the verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

7    For all of these reasons, petitioner is not entitled to relief on this jury instruction claim.

8    **C.  Prosecutorial Misconduct**

9    In his third claim for relief, petitioner argues that the trial court violated his right to due

10   process when it allowed the prosecutor to "commit an act of misconduct."  Dckt. 1 at 6.

11   Petitioner contends that the prosecutor showed "extreme antagonism" toward defense counsel

12   during his closing argument and that the trial court erred in failing to "admonish the prosecutor."

13   *Id.*  He argues that "had the prosecution not impermissibly denigrated defense counsel's

14   character, it is reasonable to assume that the jury would have been more accepting of petitioner's

15   testimony and return a verdict of not guilty." *Id.*

16   The California Supreme Court rejected these arguments, reasoning as follows:

17   Defendant also claims the trial court committed prejudicial error
     by allowing the district attorney to engage in misconduct during
18   his closing argument.  Not so.

19   **Additional Background**

20   During his closing argument, defense counsel told the jury he had
     written down 36 examples of reasonable doubt drawn from the
21   evidence presented at trial and thought of two additional examples
     while speaking.  After arguing each of the 38 points, defense
22   counsel explained to the jury that he was going to leave his notes
     on the podium in order for the district attorney to "address them or
23   not."  Defense counsel then challenged the jury to listen to the
     district attorney's rebuttal and decide whether he had provided
24   "solid, substantive answers" to each of the 38 examples of
     purported reasonable doubt raised in defense counsel's closing
25   argument.

26   ////

The district attorney responded with the following: "Defense left me this stuff here to respond to, (threw away paperwork), that's my response.  I'll tell you why, that's what a criminal defense attorney does, nitpicks until the world is over.  Life is not that simple."  Defense counsel objected "as misconduct as appealing to passion and characterization of the defense attorneys in general." The trial court responded:  "I think it's a little close.  You might want to rephrase that."  The district attorney clarified:  "You put two people together in the same room, to witness the same event and you're going to get some inconsistencies."  He then went on to address many of the points raised by defense counsel's closing.

**Analysis**

"A prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel ."  (*People v. Hill* (1998) 17 Cal.4th 800, 832.)  "It is generally improper for the prosecutor to accuse defense counsel of fabricating a defense [citations], or to imply that counsel is free to deceive the jury [citation].  Such attacks on counsel's credibility risk focusing the jury's attention on irrelevant matters and diverting the prosecution from its proper role of commenting on the evidence and drawing reasonable inferences therefrom.  [Citation .] [¶]  Nevertheless, the prosecutor has wide latitude in describing the deficiencies in opposing counsel's tactics and factual account.  [Citations.]"  (*People v. Bemore* (2000) 22 Cal .4th 809, 846 (*Bemore*).)  "Although the prosecution may not attack defense counsel's integrity, it may . . . vigorously attack the defense case and argument if that attack is based on the evidence."  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.)  "An argument which does no more than point out that the defense is attempting to confuse the issues and urges the jury to focus on what the prosecution believes is the relevant evidence is not improper."  (*People v. Cummings* (1993) 4 Cal.4th 1233, 1302, fn. 47.)  Similarly, "remarks [that] simply point[ ] out that attorneys are schooled in the art of persuasion . . . [do] not improperly imply that defense counsel [is] lying."  (*People v. Gionis* (1995) 9 Cal.4th 1196, 1216 (*Gionis*).)

We disagree with defendant that the single statement made by the district attorney in this case ("that's what a criminal defense attorney does, nitpicks until the world is over") in any way implied "dishonesty" on the part of defense counsel.  If anything, the statement asserts that defense counsel meticulously scoured through the testimony of the People's witnesses to find every conceivable inconsistency, however slight or immaterial.  (*See Merriam-Webster's Collegiate Dict.* (11th ed.2006) p. 838, col. 2 [nit-picking: "minute and usu. unjustified criticism"].)

Reviewing courts have found remarks more egregious than those uttered by the district attorney in this case "not [to] exceed the bounds of permissible vigor."  (*Gionis*, *supra*, 9 Cal.4th at pp.

1217-1218 ["'[Defense counsel]'s just doing his job'"; "'[h]is job is to . . . get him off'"]; *People v. Breaux* (1991) 1 Cal.4th 281, 305-306 [referring to defense argument, "[i]f you don't have [the law or the facts] on your side, try to create some sort of a confusion"]; *People v. Goldberg* (1984) 161 Cal.App.3d 170, 190 [defense counsel's "job" is to confuse the jury about the issues].) In short, the challenged remarks of the district attorney in this case were within the "wide latitude [allowed to counsel] in describing the deficiencies in opposing counsel's tactics and factual account." (*Bemore*, *supra*, 22 Cal.4th at p. 846.)  They did not constitute misconduct.

Opinion at **5-6.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). In considering claims of prosecutorial misconduct involving allegations of improper argument the court must examine the likely effect of the statements in the context in which they were made and determine whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002); *Sandoval v. Calderon*, 241 F.3d 765, 778 (9th Cir. 2001); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden*, 477 U.S. at 181-83.  In fashioning closing arguments, prosecutors are allowed "reasonably wide latitude," *United States v. Birges*, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to argue "reasonable inferences from the evidence." *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989).  *See also Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995).  However, prosecutors "may not, of course, employ argument which could be fairly characterized as foul or unfair."  *United States v. Gorostiza*, 468 F.2d 915, 916 (9th Cir. 1972).

It is generally unprofessional and improper for a prosecutor to malign or impugn the integrity of defense counsel in closing argument. *See United States v. Rodrigues*, 159 F.3d 439, 449-51 (9th Cir. 1998), *amended* 170 F.3d 881 (9th Cir. 1999); *Williams v. Borg*, 139 F.3d 737,

745 (9th Cir. 1998); *United States v. Frederick*, 78 F.3d 1370, 1379-80 (9th Cir. 1996).

However, in order to make an appropriate assessment,

> the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo.  Thus the import of the evaluation has been that if the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.

*United States v. Young*, 470 U.S. 1, 12-13 (1985).  While a prosecutor may fairly rebut defense counsel's contentions, *United States v. Bagley*, 772 F.2d 482, 494 (9th Cir. 1985), he or she is not entitled to use improper tactics in response to tactics of defense counsel, *Young*, 470 U.S. at 7-9.  However, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647.

Petitioner faults the trial court for failing to "admonish the prosecutor" when he made the remarks quoted above.  However, as respondent points out, the trial court did suggest to the prosecutor that he rephrase his remarks.  In response, the prosecutor clarified what he meant: that two people who witness the same event would probably give inconsistent accounts of what occurred.  The trial court had no reason to admonish the jury to disregard this latter, clarified statement.

In any event, the prosecutor's remarks during closing argument did not rise to the level of misconduct.  The remarks were made in response to defense counsel's actions in leaving his notes on the podium for the prosecutor to respond to and were therefore "invited" to some extent.  Further, the prosecutor did not imply that anyone was being untruthful or that petitioner's trial defense was dishonest.  Nor did the prosecutor imply that defense counsel was trying to deceive the jury in any way.  The comments at issue were brief and isolated and were not the predominant theme of the prosecutor's argument.  In short, the prosecutor's comments were not prejudicial to the point of denying petitioner a fair trial.  *Darden*, 477 U.S. at 181;

17

1    *Turner*, 281 F.3d at 868; *Rodrigues*, 159 F.3d at 449-51; *Williams*, 139 F.3d at 745.  *Cf. Dubria*

2    *v. Smith*,  224 F.3d 995, 1004 (9th Cir. 2000) (prosecutor's reference to defense argument as "a

3    piece of garbage" and defendant as "a liar" not improper); *Williams*, 139 F.3d at 744-45

4    (prosecutor's reference to defense argument as "trash" not improper).  In any event, defense

5    counsel objected to the argument, thereby alerting the jury that "misconduct" in the form of

6    "appealing to passion and characterization of . . . defense attorneys in general" was improper.

7    *See* RT at 260.  The jury was later instructed that the opening statements and closing arguments

8    of counsel were not evidence.  *Id.* at 268.  Under these circumstances, the trial court did not

9    violate petitioner's federal constitutional rights when it failed to admonish the prosecutor during

10   his closing argument.  Accordingly, petitioner is not entitled to relief on this claim.

11                 **D.  Ineffective Assistance of Appellate Counsel**

12          In his final claim for relief, petitioner argues that his appellate counsel rendered

13   ineffective assistance in failing to seek review in the California Supreme Court.  Dckt. 1 at 7.  He

14   argues that counsel's failure to do so left him "to the vagaries of fate" and prejudiced his ability

15   to exhaust his federal claims in state court.  *Id.*

16          The record reflects that after the California Court of Appeal rejected petitioner's

17   arguments on appeal, petitioner's appellate counsel sent him a letter in which he expressed his

18   opinion that the California Supreme Court would not accept review of petitioner's claims and

19   informed petitioner that, if he wished, he could file a petition for review or a petition for writ of

20   habeas corpus on his own.  Resp.'s Lodg. Doc. 5, Ex. B at 1.  Counsel advised petitioner about

21   the requirements for filing both of these pleadings, and informed him that if he had believed

22   either petition would be successful, he would have offered to file them on petitioner's behalf.  *Id.*

23   at 1-2.  Petitioner thereafter filed a petition for review on his own and received a decision on the

24   merits of his claims.

25          Under these circumstances, petitioner's claim that his appellate counsel rendered

26   ineffective assistance in failing to pursue a petition for review on petitioner's behalf must be

1  denied.  Counsel had no legal obligation to continue his representation of petitioner after the

2  direct appeal was concluded, and petitioner had no constitutional right to appointed counsel

3  thereafter.  Prisoners do not have a constitutional right to counsel when mounting collateral

4  attacks upon their convictions, nor do they have this right when pursuing a discretionary appeal

5  on direct review of a conviction.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Clearly

6  established federal law provides that "the right to appointed counsel extends to the first appeal of

7  right, and no further."  *Id.  See also Murray v. Giarratano*, 492 U.S. 1, 7 (1989) (federal

8  constitution does not require states to appoint counsel for death row inmates seeking state post-

9  conviction relief); *Ross v. Moffitt*, 417 U.S. 600, 616 (1974) (indigent defendants do not have a

10  constitutional right to appointed counsel for discretionary appeals).

11         Citing *Anders v. California*, 386 U.S. 738 (1967) and *Douglas v. California*, 372 U.S.

12  353 (1963), petitioner argues in the traverse that an indigent defendant has a constitutional right

13  to an attorney on discretionary review, such as a "Petition for Review to the California Supreme

14  Court."  Traverse at 19.  These cases do not support petitioner's argument.  In *Douglas*, the

15  United States Supreme Court held that a criminal defendant has a federal constitutional right to

16  the effective assistance of counsel on his first appeal of right.  372 U.S. at 356.  The court in

17  *Douglas* specifically declined to decide whether "California would have to provide counsel for

18  an indigent seeking a discretionary hearing from the California Supreme Court after the District

19  Court of Appeal had sustained his conviction."  *Id.*  In *Anders*, the court held that appellate

20  counsel cannot merely inform the appellate court that an appeal would be frivolous, and

21  thereafter abandon the appeal.  386 U.S. at 744.  Rather, counsel must file a brief raising all

22  arguable issues, accompanied by a motion to withdraw.  *Id.*  Here, petitioner's appellate counsel

23  effectively prosecuted petitioner's direct appeal and informed him of the need to proceed on his

24  own if he wished to pursue collateral review.  That was all he was required to do.

25         The court also notes that counsel's failure to file a petition for review in the California

26  Supreme Court did not impact petitioner's ability to exhaust his federal constitutional claims in

1  state court.  Petitioner exhausted his claims himself when he filed his petition for a writ of

2  habeas corpus in the California Supreme Court and received a ruling on the merits of those

3  claims.  Petitioner's argument in the traverse that the California Supreme Court would have been

4  "more accepting" of his claims if they had been filed in a petition for review, as opposed to a

5  petition for writ of habeas corpus, is unsupported by anything in the record and lacks merit in

6  any event.  Nor was petitioner prevented from raising his claims in federal court by the failure of

7  his trial counsel to file a petition for review.  This is not a case where petitioner is seeking to

8  overcome a procedural default which has prevented him from pursuing his claims in federal

9  court.  *Cf. Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309 (2012) (ineffective assistance of

10  counsel at initial-review collateral proceeding on a claim of ineffective assistance of trial counsel

11  established cause for a prisoner's procedural default of same claim in a federal habeas

12  proceeding); *Maples v. Thomas*, ___ U.S. ___, 132 S.Ct. 912 (2012) (cause for the petitioner's

13  state procedural default of failing to file a timely appeal in state court shown where petitioner

14  was abandoned by counsel during post-conviction proceedings and lacked notice that he needed

15  to protect himself by proceeding pro se).  In short, the actions of petitioner's trial counsel did not

16  prevent petitioner from filing his claims, either in state or federal court.

17          There is no evidence here that appellate counsel's performance was deficient or that

18  petitioner suffered prejudice as a result of any deficient performance.  *See Strickland v.*

19  *Washington*, 466 U.S. 668, 687 (1984) (in order to prevail on an ineffective assistance of counsel

20  claim, a defendant must show that counsel's performance was deficient and that this deficient

21  performance prejudiced the defendant).  Accordingly, petitioner is not entitled to relief on his

22  claim of ineffective assistance of appellate counsel.

23          **E.  Evidentiary Hearing**

24          In the traverse, petitioner requests an evidentiary hearing on his claims.  Traverse at 4,

25  22.  He notes that he did not receive an evidentiary hearing in state court.

26  ////

1    Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

2    following circumstances:

3        (e)(2) If the applicant has failed to develop the factual basis of a
         claim in State court proceedings, the court shall not hold an
4        evidentiary hearing on the claim unless the applicant shows that-

5            (A) the claim relies on-

6            (I) a new rule of constitutional law, made retroactive to cases on
             collateral review by the Supreme Court, that was previously
7            unavailable; or

8            (ii) a factual predicate that could not have been previously
             discovered through the exercise of due diligence; and

9
             (B) the facts underlying the claim would be sufficient to establish
10           by clear and convincing evidence that but for constitutional error,
             no reasonable fact finder would have found the applicant guilty of
11           the underlying offense;

12   28 U.S.C. § 2254(e)(2).

13       Under this statutory scheme, a district court presented with a request for an evidentiary

14   hearing must first determine whether a factual basis exists in the record to support a petitioner's

15   claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*,

16   187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

17   2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). A federal court must

18   take into account the AEDPA standards in deciding whether an evidentiary hearing is

19   appropriate. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). A petitioner must also "allege[]

20   facts that, if proved, would entitle him to relief." *Schell v. Witek*, 218 F.3d 1017, 1028 (9th Cir.

21   2000).

22       Here, petitioner has not shown that any of his claims raise a factual predicate that could

23   not have been previously discovered through the exercise of due diligence. Nor has he shown

24   that the facts underlying any of his claims would be sufficient to establish by clear and

25   convincing evidence that, but for constitutional error, no reasonable fact finder would have

26   found the him guilty of the underlying offense. Accordingly, the court finds that no additional

21

factual supplementation is necessary and that an evidentiary hearing is not appropriate with

respect to the claims raised in the instant petition.  In addition, for the reasons described above,

petitioner has failed to demonstrate that the state court's decision on his claims is an

unreasonable determination of the facts under § 2254(d)(2).  *See Schriro*, 550 U.S. at 481.

Accordingly, an evidentiary hearing is not necessary or appropriate in this case.

**III. Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

his objections petitioner may address whether a certificate of appealability should issue in the

event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant).

DATED:   June 26, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

22